STEVEN W. MOORE (SBN 193068)
swmoore@foxrothschild.com
JONATHAN C. PEARCE (SBN 347309)
jcpearce@foxrothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, California 94104
Telephone: 415.364.5540
Facsimile: 415.391.4436

*Attorneys for Defendant*
WESTERN DISTRIBUTING COMPANY, INC.

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CISNEROS, on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>WESTERN DISTRIBUTING COMPANY; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. **'25CV453  BJC  DEB**<br><br>*[Removed from San Diego Superior Court Case No. 25CU003794C]*<br><br>**DEFENDANT WESTERN DISTIBUTING COMPANY INC.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446** |

1

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

# **<u>TABLE OF CONTENTS</u>**

I.     Statement of Jurisdiction ........................................................................9

II.     Venue ..........................................................................................................9

III.     Pleadings, Process, and Orders ...............................................................9

IV.     Timeliness of Removal ..........................................................................11

V.     CAFA Jurisdiction ..................................................................................11

       A.     This is a Class Action. ...................................................................12

       B.     The Proposed Class Contains at Least 100 Members.....................12

       C.     Defendant is Not a Government Entity............................................13

       D.     CAFA Diversity of Citizenship Exists............................................13

       E.     The Amount in Controversy Exceeds \$5,000,000. ..........................15

             1.     First Cause of Action: Alleged Unpaid Wages ......................18

             2.     Second Causes of Action: Premiums for Alleged Missed Meal Periods ...........................................................................20

             3.     Third Cause of Action: Failure to Authorize Rest Periods/Non-Productive Time ..................................................21

             4.     Fifth Cause of Action: Wage Statement Violations ................23

             5.     Sixth Cause of Action: Waiting Time Penalties.......................24

             6.     Attorney's Fees .........................................................................25

VI.     Notice of Removal to Adverse Party and State Court ..................................28

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5   *Altamirano v. Shaw Indus., Inc.*,
       No. C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) ............... 17

6

7   *Alvarez v. Ltd. Express, LLC*,
       No. 07CV1051 IEG (NLS), 2007 WL 2317125 (S.D. Cal. Aug. 8,
8       2007) ............................................................................................................ 16

9   *Blackwell v. SkyWest Airlines, Inc.*,
       245 F.R.D. 453 (S.D. Cal. 2007) ................................................................. 23
10

11  *Brady v. Mercedes-Benz USA, Inc.*,
       243 F. Supp. 2d 1004 (N.D. Cal. 2002) ....................................................... 25
12

13  *Burns v. Windsor Ins. Co.*,
       31 F.3d 1092 (11th Cir. 1994) ..................................................................... 15
14

15  *Campbell v. Vitran Exp., Inc.*,
       471 F. App'x 646 (9th Cir. 2012) ................................................................. 26
16

17  *Coleman v. Estes Express Lines, Inc.*,
       730 F. Supp. 2d 1141 (C.D. Cal. 2010) ................................................. 16, 19
18

19  *Dart Cherokee Basin Operating Co., LLC v. Owens*,
       574 U.S. 81 (2014) ....................................................................................... 26

20  *Dart Cherokee Basin Operating Co. v. Owens*,
       135 S. Ct. 547 (2014) ............................................................................. 15, 18
21

22  *Duberry v. J. Crew Grp., Inc.*,
       No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018 (C.D. Cal.
23      July 28, 2015) ............................................................................................... 23

24  *Fritsch v. Swift Transp. Co. of Arizona*,
       899 F.3d 785 (9th Cir. 2018) ....................................................................... 25
25

26  *Galt G/S v. JSS Scandinavia*,
       142 F.3d 1150 (9th Cir. 1998) ..................................................................... 25
27

28

3

DEFENDANT'S NOTICE OF REMOVAL

*Garcia v. ACE Cash Express, Inc.*,
   No. SACV 14-0285-DOC, 2014 WL 2468344 (C.D. Cal. May 30,
   2014) ................................................................................................ 16, 19

*Goldberg v. CPC International*,
   678 F. 2d 1365 (9th Cir. 1982) ....................................................... 25

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 28

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ........................................................................... 14

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015) .................................................... 15, 26

*Jasso v. Money Mart Express, Inc.*,
   No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ............... 27

*Jones v. Tween Brands, Inc.*,
   No. 2:14-CV-1631-ODW, 2014 WL 1607636 (C.D. Cal. Apr. 22,
   2014) ................................................................................................ 17

*Kanter v. Warner-Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001) ........................................................... 13

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ............................................. 15

*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008) ...................................... 16, 23

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986) ........................................................... 13

*Lewis v. Verizon Commc'ns, Inc.*,
   627 F.3d 395 (9th Cir. 2010) ........................................................... 26

*Longmire v. HMS Host USA, Inc.*,
   2012 WL 5928485 (S.D. Cal. Nov. 26, 2012) ................................. 26

*Lopez v. First Student, Inc.*,
   427 F.Supp.3d 1230 (C.D. Cal. 2019) ............................................. 16

4

DEFENDANT'S NOTICE OF REMOVAL

*McCraw v. Lyons*,
    863 F. Supp. 430 (W.D. Ky. 1994) ...................................................................17

*McGuigan v. City of San Diego*,
    183 Cal. App. 4th 610 (2010)...........................................................................27

*Mendoza v. Nat'l Vision, Inc.*,
    No. 19-CV-01485-SVK, 2019 WL 2929745 (N.D. Cal. July 8,
    2019).................................................................................................................27

*Molnar v. 1-800-Flowers.com, Inc.*,
    No. 08-CV-0542-CAS-JCx, 2009 WL 481618 (C.D. Cal. Feb. 23,
    2009).................................................................................................................27

*Muniz v. Pilot Travel Centers LLC*,
    No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May
    1, 2007).......................................................................................................16, 17

*Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) .........................................................................................11

*Navarro v. Servisair, LLC*,
    No. C 08-02716 MHP, 2008 WL 3842984 (N.D. Cal. Aug. 14,
    2008).................................................................................................................16

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998).............................................................................15

*Northern Illinois Gas Co. v. Airco Indus. Gases*,
    676 F.2d 270 (7th Cir. 1982).............................................................................11

*Overholt v. Airista Flow Inc.*,
    No. 17cv1337-MMA (AGS), 2018 WL 355231 (S.D. Cal. Jan. 10,
    2018).................................................................................................................14

*Pineda v. Bank of America, NA*,
    50 Cal. 4th 1389 (2010)....................................................................................24

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000)...........................................................................26

*Rippee v. Boston Market Corp.*,
    408 F. Supp. 2d 982 (S.D. Cal. 2005) ..............................................................15

5

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

*Ritenour v. Carrington Mortgage Servs. LLC*,
  228 F. Supp. 3d 1025 (C.D. Cal. 2017) ................................................................ 16

*Rodriguez v. Cleansource, Inc.*,
  No. 14–CV–0789–L, 2014 WL 3818304 (S.D. Cal., Aug. 4, 2014) ................ 26

*Simmons v. PCR Technology*,
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ............................................................. 25

*Snyder v. Harris*,
  394 U.S. 332 (1969) ............................................................................................ 13

*Spivey v. Vertrue, Inc.*,
  528 F.3d 982 (7th Cir. 2008) ............................................................................. 26

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
  19 F.3d 514 (10th Cir. 1994) ............................................................................. 13

*Strotek Corp. v. Air Transp. Ass'n of Am.*,
  300 F.3d 1129 (9th Cir. 2002) ........................................................................... 13

*Thomas v. Aetna Health of Cal., Inc.*,
  No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715 (E.D. Cal. June
  2, 2011) ......................................................................................................... 16, 17

*Tompkins v. Basic Research LL*,
  No. CIV. S08244-LKK-DAD, 2008 WL 1808316 (E.D. Cal. Apr.
  22, 2008) ............................................................................................................. 27

*United Computer Systems, Inc. v. AT & T Corp.*,
  298 F.3d 756 (9th Cir. 2002) ............................................................................. 11

*Vasquez v. California*,
  45 Cal. 4th 243 (2008) ........................................................................................ 27

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................. 27

**Statutes**

28 U.S.C. § 84(c), 1441(a), and 1446(a) ...................................................................... 9

28 U.S.C. § 1332, 1441, AND 1446 .............................................................................. 1

28 U.S.C. § 1332(c)(1) ................................................................................................ 14

6

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

28 U.S.C. § 1332(c)(l) ................................................................................... 14

28 U.S.C. § 1332(d) ................................................................................ 9, 12

28 U.S.C. § 1332(d)(2) ................................................................................ 28

28 U.S.C. §§ 1332(d)(2)(A), 1453 ............................................................... 15

28 U.S.C. §§ 1332(d)(2)(A), 1453(b) .......................................................... 13

28 U.S.C. § 1332(d)(5)(B) ..................................................................... 12, 13

28 U.S.C. §  1332(d), 1441, and 1446 .......................................................... 9

28 U.S.C. § 1441(a) ..................................................................................... 15

28 U.S.C. § n 1446 .................................................................................. 9, 12

28 U.S.C. § 1446(a) ..................................................................................... 15

28 U.S.C. §  1446(d) .................................................................................... 28

28 USC § 1446(b)(2)(B) .............................................................................. 11

CAFA ................................................................................................... *passim*

California Business and Professions Code § 17200 *et seq.* ...................... 10

California Code of Civil Procedure § 340(a) .............................................. 23

California Labor Code §§ 200, 218, 1194, 1194.2 and 1197 .............. 10, 18

California Labor Code § 201 *et seq.* .......................................................... 10

California Labor Code §§ 204, 210, 218 ..................................................... 10

California Labor Code § 226 ....................................................................... 10

California Labor Code §§ 226.2, 1182.12, 1194, 1197, 1197.1 ................. 10

California Labor Code §§ 226.7, and 512 ................................................... 10

California Labor Code § 2802 ..................................................................... 10

Labor Code ections 201 through 203 ......................................................... 24

Labor Code section 203 .............................................................................. 24

7

DEFENDANT'S NOTICE OF REMOVAL

Labor Code section 204 ..................................................................................25, 28

Labor Code section 226(a)(2) ...............................................................................18

Labor Code section 226(e) ............................................................................23, 24

Labor Code section 226.2 ....................................................................................21

Labor Code section 226.7 ....................................................................................20

Labor Code sections 226.7, 512, 558, 1198 .........................................................21

Labor Code sections 1194 and 1194.2.................................................................22

Rule 9 ..................................................................................................................12

8

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Western Distributing Company, Inc. ("Defendant") hereby removes the state court action described herein, filed by Plaintiff Juan Cisneros ("Plaintiff") in the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. sections 1332(d), 1441, and 1446. Defendant makes the following allegations in support of its Notice of Removal:

**I.     STATEMENT OF JURISDICTION**

1.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

**II.     VENUE**

2.     Plaintiff originally brought this action in the Superior Court of the State of California, County of San Diego. Therefore, the only venue Defendant can remove to, pursuant to 28 U.S.C. sections 84(c), 1441(a), and 1446(a), is the Southern District of California. However, Defendant intends to file a motion challenging the Southern District of California as the appropriate venue.

**III.     PLEADINGS, PROCESS, AND ORDERS**

3.     On January 22, 2025, Plaintiff filed an unverified Class Action Complaint (the "Complaint") against Defendant and various Does 1 through 50 in

DEFENDANT'S NOTICE OF REMOVAL

the San Diego County Superior Court, entitled *JUAN CISNEROS, individually and on behalf of all other similarly situated, Plaintiff, v. WESTERN DISTRIBUTING COMPANY, and DOES 1 through 50, inclusive, Defendants*, designated Case No. 25CU003794C (the "State Court Action")

4. The Complaint asserts the following 8 causes of action:

1. Failure to Pay All Wages Owed (California Labor Code §§ 200, 218, 1194, 1194.2 and 1197);

2. Meal Period Violations (California Labor Code §§ 226.7, and 512);

3. Failure to Pay for Authorized Rest Periods/Non-Productive Time (California Labor Code §§ 226.2, 1182.12, 1194, 1197, 1197.1 and Wage Orders);

4. Untimely Payment of Wages (California Labor Code §§ 204, 210, 218);

5. Wage Statement Violations (California Labor Code § 226);

6. Waiting Time Penalties (California Labor Code § 201 *et seq.*);

7. Failure to Reimburse Business Expenses (California Labor Code § 2802); and

8. Unfair Competition (California Business and Professions Code § 17200 *et seq.*).

The allegations in the Complaint are incorporated into this Notice of Removal by reference without admitting the truth of any of them.

5. On January 28, 2025, Defendant was served, via substituted service on a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served and thereafter mailed, a copy of Plaintiff's Civil Case Cover Sheet, Complaint, Summons, Notice of Case Assignment and Case Management Conference, Alternative Dispute Resolution Information Package, and Stipulation to Use of Alternative Dispute Resolution. A true and correct copy of these documents is attached hereto as **Exhibit A**.

6. Attached as **Exhibit B** is a true and correct copy of the Proof of Service

10

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

of Summons, Complaint, Alternative Dispute Resolution Package, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, and Stipulation to Use of Alternative Dispute Resolution; and Declaration of Mailing of Civil Case Cover Sheet, Complaint, Summons, Notice of Case Assignment and Case Management Conference, Alternative Dispute Resolution Package, and Stipulation to Use of Alternative Dispute Resolution.

7.    **Exhibits A and B** together comprise all process, pleading and orders served on Defendant in the State Court Action.

## IV.    TIMELINESS OF REMOVAL

8.    This Notice of Removal is timely in that it has been filed and served within 30 days of the January 28, 2025, service of the Summons and Complaint on Defendant. 28 USC § 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or service on that defendant" by which to file the notice of removal.); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (defendant's period for removal will be no less than 30 days from service).

9.    Defendant is the only named defendant in this action.

10.    The Doe defendants named in the Complaint do not affect this Notice of Removal. *Northern Illinois Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 272 (7th Cir. 1982) ("Nominal parties, however, are disregarded for removal purposes and need not join in the petition."). Moreover, Plaintiff has not filed or served any document indicating that any "Doe defendants" have been served with the Summons and Complaint. Hence the Doe defendants need not join in the Notice of Removal. See *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("The rule of unanimity does not apply to nominal, unknown or fraudulently joined parties.") (internal quotations omitted).

## V.    CAFA JURISDICTION

11.    CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of

11

DEFENDANT'S NOTICE OF REMOVAL

plaintiffs is a citizen of a state different from any defendant, where there are at least 100 putative class members, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets each CAFA requirement for removal and is properly removed by the filing of this Notice of Removal.

**A.    This is a Class Action.**

12.    Plaintiff filed this action as a class action. (Complaint, ¶¶ 21-24.)

**B.    The Proposed Class Contains at Least 100 Members.**

13.    The provisions of CAFA apply to proposed class actions involving 100 individuals or more. *See* 28 U.S.C. § 1332(d)(5)(B). This requirement is met in this case. *See* Fiedler Decl. ¶ 4.

14.    Plaintiff brings this lawsuit on behalf of himself and "[a]ll current and former non-exempt employees who worked for Defendants in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through the date of class certification." (Complaint, ¶ 21.) The Complaint defines "Class Period" as the period of time of four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of the Complaint [on January 22, 2025] in this action up to, and including, the present." (*Id.*) Thus, the Class Period is January 22, 2021, to the present.[1]

15.    "Over-the-road" driver, also referred to as long-haul trucker or interstate driver, is the only non-exempt job position that performed work for Defendant in California during the Class Period. Defendant has employed at least 328 persons in this position during the Class Period.  (*See* Fiedler Decl. ¶¶ 3, 4.)  Thus, CAFA's

---

[1] Plaintiff erroneously cites Emergency Rule 9 as extending the Class Period. Rule 9 does not apply to this case because the Class Period does not overlap with Rule 9's statute of limitations tolling period. (CA ST RULES APPENDIX App. I ["Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020].)

DEFENDANT'S NOTICE OF REMOVAL

requirement that the action involve 100 or more individuals is satisfied.

## C.    Defendant is Not a Government Entity.

16.    CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(B).

17.    Defendant is a corporation. It is not a state, state official, or other government entity exempt from CAFA. (Declaration of Vieri Gaines Guadagni ["Guadagni Decl."], ¶ 3.)

## D.    CAFA Diversity of Citizenship Exists.

18.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the unnamed putative class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff is a citizen of a different state than Defendant.

19.    For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove

DEFENDANT'S NOTICE OF REMOVAL

otherwise"); *Overholt v. Airista Flow Inc.*, No. 17cv1337-MMA (AGS), 2018 WL 355231, at *4 (S.D. Cal. Jan. 10, 2018) (citations omitted).

20.    Here, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in and as a citizen of the State of California. Declaration of Emily Fiedler ["Fiedler Dec."], ¶ 6 ["Throughout his employment at Western [in 2024], Mr. Cisneros represented that his place of residence was in Bakersfield, California."].)

21.    For diversity purposes, a corporation "shall be deemed a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(l). A corporation is also deemed to be a citizen of the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). As clarified by the Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), Section 1332(c)(1)'s use of "the phrase 'principal place of business' refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center." *Id.* at 80-81. Except in unusual circumstances, a corporation's corporate headquarters is its nerve center. *Id.* at 93-94.

22.    Defendant is incorporated under the laws of the State of Colorado and its headquarters and principal place of business is in Denver, Colorado. (Guadagni Decl., ¶ 3.) All of Defendant's corporate decisions, including operational, executive, administrative, and policymaking decisions, are made from its Denver, Colorado headquarters. (Guadagni Decl., ¶ 3.) Defendant's management and administrative functions are also located in its Denver headquarters, including human resources, finance, treasury, payroll, and safety. (Guadagni Decl., ¶ 3.) Defendant's "nerve center" and, thus, its principal place of business, is located in Denver, Colorado. *See Hertz*, 559 U.S. at 92-93. Accordingly, for purposes of diversity jurisdiction, Defendant is a citizen of Colorado and not a citizen of the State of California.

23.    The presence of Doe defendants in this case has no bearing on diversity

14

DEFENDANT'S NOTICE OF REMOVAL

with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) ("28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal.").

24.     Therefore, the named Plaintiff is a citizen of a state (California) different from Defendant (Colorado), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### E.     The Amount in Controversy Exceeds $5,000,000.

25.     The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). In *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014), the Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* at 554. "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court diversity jurisdiction. *Id.* at 553

26.     For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on his claims. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.")). The ultimate inquiry is the amount that is put "in controversy" by the allegations of a plaintiff's complaint, not what a defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015)

15

DEFENDANT'S NOTICE OF REMOVAL

(explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants "are still free to challenge the actual amount of damages in subsequent proceedings and at trial" because they are only estimating the amount in controversy). Defendant "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)).

27.    In addition, Defendant may assume violation rates of 100% in calculating the amount in controversy when, as here, the complaint does not allege a more precise calculation, but instead Plaintiff alleges he and putative class members suffered the alleged violations "[**a]s a matter of policy and practice,**" "[**d]ue to Defendant's policy and practice**," and those violations were "**regularly**" and "**routinely experienced**" (Complaint at ¶¶ 31, 32, 33, 39 emphasis added.) *See, e.g.*, *Lopez v. First Student, Inc.*, 427 F.Supp.3d 1230, 1236 (C.D. Cal. 2019) ("Plaintiffs' failure to limit their allegations in any meaningful way — and indeed, the allegations suggest the systematic and expansive nature of the split shift wage violations — justifies Defendants' assumptions of a 100% split shift violation rate and maximum recovery."); *Ritenour v. Carrington Mortgage Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate."); *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715, at *20 (E.D. Cal. June 2, 2011); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *8-9 (N.D. Cal. Aug. 14, 2008); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008); *Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB,

DEFENDANT'S NOTICE OF REMOVAL

2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages." (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)). These courts recognize "that imposing overly stringent requirements on a defendant to proving the amount in controversy would run the risk of essentially asking defendants to prove the plaintiffs' case." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *5 (N.D. Cal. June 14, 2013)

28.    A defendant is thus not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz*, 2007 WL 1302504, at *5 (citing *McGraw*, 863 F. Supp. 2d at 434); *see also Jones v. Tween Brands, Inc.*, No. 2:14-CV-1631-ODW (PLAx), 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding defendant did not need to provide payroll data to support removal because defendant "is not required to meet such a high burden.") (citing *Muniz*, 2007 WL 1302504, at *7); *Thomas*, 2011 WL 2173715, at *20 ("[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." (citing *Muniz*, 2007 WL 1302504, at *3)).

29.    Defendant denies the validity and merit of the entirety of Plaintiff's claims, the legal theories upon which they are ostensibly based, and the claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or the putative class is entitled to any damages or penalties whatsoever, it is readily apparent that the allegations of Plaintiff's Complaint establish that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000.

30.    When, as here, the plaintiff's complaint does not state the amount in controversy, the defendant's Notice of Removal may do so. Defendant's Notice of Removal must simply include "a plausible allegation that the amount in controversy

17

exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.

### 1.   First Cause of Action: Alleged Unpaid Wages

31.   In support of his First Cause of Action for Failure to Pay All Wages Owed in violation of California Labor Code §§ 200, 218, 1194, 1194.2 and 1197, Plaintiff alleges:

> Defendant failed to pay Plaintiff and the class members at the lawful minimum wage
> rate for all hours worked, resulting in unpaid minimum wages.
>
> First…Defendant failed to pay and the class members for all hours suffered or permitted to work. Specifically, Defendants failed to compensate Plaintiff and the class members for time spent loading and unloading the truck and/or for work
> performed before or after driving the truck. Second…Defendant often required Plaintiff and the class members to work though their unpaid meal period. (27)
>
> Defendants violated Labor Code section 226(a)(2) … due to ***Defendant's policy and practice of requiring off-the-clock work***. Specifically, Plaintiff and the class members completed tasks before and after driving the truck and during their meal periods while off-the-clock.
>
> Defendants' unlawful acts and ***omissions deprived Plaintiff and class members of minimum, regular and overtime wages*** in amounts to be determined at trial.

(Complaint ¶¶ 26, 27, 39, 43, see also ¶¶ 28, 29, 31 emphasis added.) Plaintiff makes no allegations regarding the frequency or duration of the claimed time worked off-the-clock for himself or any Putative Class Member other than to allege Defendant maintained a policy and practice of requiring off-the-clock work.

32.   On behalf of himself and Putative Class Members, Plaintiff seeks to recover unpaid wages, liquidated damages, prejudgment interest, and attorney's fees and costs. (Complaint ¶ 43.)

33.   Defendant denies that any employee, including Plaintiff, has any claim for unpaid wages.

34.   Plaintiff does not allege on behalf of himself, or any other Putative Class Member, any minimum or maximum amount of time worked for which wages are

18

due.

35.    Between January 22, 2021, and February 18, 2025, Defendant collectively employed at least 328 interstate drivers. (Fiedler Decl., ¶ 4.) These employees worked a combined total of approximately 16,730 work weeks during this time period. (Fiedler Decl., ¶ 7.) Interstate drivers work on average 5 days a week, including an average of 2 days per week in California. (Fiedler Decl., ¶ 11.) Interstate drivers also work an average of 8.2 hours per day and 46 hours per week. (Fiedler Decl., ¶ 11.) In 2021, their estimated average weekly pay was approximately $1363, and increased year-over-year to the current average of $1,652 per week. (Fiedler Decl., ¶ 10.) Based on the lowest average weekly pay during class period, $1363, and assuming 46 hours worked per week on average, the average hourly rate of pay is $29.63.

36.    Defendants "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)). As interstate drivers worked an average of 2 days per week in California during each of the 16,730 workweeks they collectively worked from January 22, 2021, to February 18, 2025. Applying a conservative estimate one hour of unpaid regular wages per day worked in California, and applying the average hourly rate of $29.63, the amount in controversy for Plaintiff's First Cause of Action *for unpaid regular wages* is **$991,419.80:**

- Average hourly rate of $29.63
- Conservative estimate of one hour of unpaid regular wages ($29.63) per day worked in California (2 days) = $59.26 in unpaid wages per workweek.
- $59.26 x 16,730 workweeks = $991,419.80

19

DEFENDANT'S NOTICE OF REMOVAL

37.    Because Plaintiff alleged unpaid overtime wages in addition to regular wages, and assuming the same conservative estimate of one hour of unpaid overtime wages, the amount in controversy for Plaintiff's First Cause of Action *for unpaid overtime wages* is **$1,487,129.70.**

- Average hourly rate of $29.63 x 1.5 = $44.44 average overtime rate
- Conservative estimate of one hour of unpaid overtime ($44.44) per day worked in California (2 days) = $88.89 in unpaid wages per workweek.
- $88.89 x 16,730 workweeks = $1,487,129.70

38.    Therefore, Plaintiff's total amount in controversy for one hour of unpaid regular wages and one hour of unpaid overtime wages is **$2,478,549.50.**

39.    In addition, Plaintiff seeks "to recover the full amount of the unpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid (Complaint ¶ 43, and Prayer for Relief at ¶ e, page 16, line 3.) Thus, the amount in controversy on Plaintiff's claim for liquidated damages is **$2,478,549.50** for his First Cause of Action.

40.    Accordingly, the amount in controversy on Plaintiff's First Cause of Action for allegedly unpaid wages and liquidated damages is **$4,957,099.**

## 2.    Second Causes of Action: Premiums for Alleged Missed Meal Periods

41.    In support of his Second Cause of Action for Meal Period Violations, Plaintiff alleges that,

Plaintiff and other class members ***routinely experienced***, missed, late, short, and interrupted meal periods due to the demands of the job.

Plaintiff and the class members ***regularly took late meal periods well past the fifth hour*** of work. Plaintiff and the class members often worked 6-7 hours before being able to take a meal period.

***As a matter of policy and practice, Plaintiff and the class members were not provided meal period premiums*** in lieu of missed meal periods as required by Labor Code section 226.7. (33.)

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

Defendants willfully failed in their affirmative obligation to consistently provide Plaintiff and class members compliant, duty-free meal periods of not less than 30 minutes beginning before the fifth hour of hour for each work period of more than five hours per day and a second dutyfree meal period of not less than 30 minutes beginning before the tenth hour of hour of work in violation of Labor Code sections 226.7, 512, 558, 1198 and the IWC Wage Orders (the "Meal Periods" sections of the applicable orders).

Further, Defendants willfully failed in their affirmative obligation to consistently pay Plaintiff and class members one additional hour of pay at the respective regular rate of compensation for each workday that a fully compliant meal period was not provided, in violation of Labor Code sections 226.7, 512, 558, and 1198 and the IWC Wage Orders (the "Meal Periods" sections of the applicable orders).

(Complaint ¶¶ 31-33, 46, 47, emphasis added.)

42.    The foregoing allegations support a plausible assumption of a 100% violation rate. Assuming that each putative class member missed one meal period for each of the two days worked in California during each of the 16,730 workweeks they collectively worked from January 22, 2021, to February 18, 2025, the putative class meal period premium damages would be approximately **$991,419.80 [**$29.63/hour x 2 violation/week x 16,730 workweeks]. This amount is just based on the asserted missed break premiums and does not take into account the related unpaid wages for time worked.

### 3.    Third Cause of Action: Failure to Authorize Rest Periods/Non-Productive Time

43.    In support of his Third Cause of Action for Failure to Authorize Rest Periods/Non-Productive Time, Plaintiff Alleges:

Because Plaintiff and class members ***were not separately compensated for rest periods*** (a rate required by statute) and non-productive time, Plaintiff and class members are owed wages for this time.

Labor Code section 226.2 applies to employees who are compensated in whole, or in part, on a piece-rate basis. Section 226.2(a)(1) requires employers to compensate employees for "rest and recovery periods and other non-productive time spent separate from any piece rate compensation."

Defendants also failed in their affirmative obligation to pay Plaintiff and class members for rest periods at the rate required by section

21

226.2(a)(3)(A), resulting in unpaid wages to Plaintiff and class members.

Plaintiff and class members are entitled to recover the full amount of the unpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid (and interest thereon), in addition to interest, attorneys' fees, and costs to the extent permitted by law, including under Labor Code sections 1194 and 1194.2.

(Complaint ¶¶ 50, 53, 58, 59.) Given that Plaintiff alleges that Defendant did not separately compensate interstate drivers for rest periods/non-productive time, whatsoever, the foregoing allegations support a plausible assumption of a 100% violation rate. Rest periods must be compensated by the higher of the average hourly rate or the applicable minimum wage. (Complaint ¶ 55.)

44.     In 2021, Class Members estimated average weekly pay was approximately $1363, and increased year over year to the current average of $1,652 per week. (Fiedler Decl., ¶ 10.) Based on the lowest average weekly pay during class period, $1363, and assuming 46 hours worked per week on average, the average hourly rate of pay is $29.63.

45.     Assuming that each putative class member was not separately compensated for one hour of rest period/non-productive time for each of the two days worked in California during each of the 16,730 workweeks they collectively worked from January 22, 2021, to February 18, 2025, the putative class unpaid wages for not separately compensating rest periods would be approximately **$991,419.80 [**$29.63/hour x 2 violation/week x 16,730 workweeks].

46.     In addition, Plaintiff seeks "to recover the full amount of the unpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid (Complaint ¶ 59, and Prayer for Relief at ¶ e, page 16, line 3.) Thus, the amount in controversy on Plaintiff's claim for liquidated damages is **$991,419.80** for his Third Cause of Action.

47.     Therefore, the amount in controversy on Plaintiff's Third Cause of Action for allegedly uncompensated rest period/non-productive time and liquidated

168855018.1

damages is **$1,982,839.60.**

### 4.    Fifth Cause of Action: Wage Statement Violations

48.    In support of his Fifth Cause of Action, Plaintiff alleges, "Defendants failed to provide accurate itemized wage statements to class members ***in each pay period*** as a result of Defendant's unlawful policies and practices. (Complaint ¶ 38.)

49.    Based on these allegations, Plaintiff claims Plaintiff and class members are entitled to recover the statutory penalty of $50 per employee for the initial pay period in which a violation occurred and $100 per employee for each violation in a subsequent pay period, up to an aggregate penalty of $4,000 per employee, in addition to interest, attorneys' fees, and costs to the extent permitted by law, including under Labor Code section 226(e). (Complaint ¶ 68.)

50.    Given Plaintiff's allegations that non-compliant wage statements were provided to him and putative class members "in each pay period," it is reasonable to assume that, under Plaintiff's theory, each wage statement issued to putative class members were not compliant during the relevant period of time. *See Duberry v. J. Crew Grp., Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, at *6-7 (C.D. Cal. July 28, 2015) (finding it reasonable to apply a 100% violation rate as to the inaccurate wage statement claim); *Korn*, 536 F. Supp. 2d at 1204 (courts may consider maximum penalty in calculating amount in controversy for wage statement claim).

51.    Plaintiff's wage statement claim is subject to a one-year statute of limitations. *See Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462 (S.D. Cal. 2007) ("Recovery under § 226(a) constitutes a penalty and is therefore governed by a one-year statute of limitations under California Code of Civil Procedure § 340(a).").

52.    During the period of January 22, 2024, to February 18, 2025, Defendant issued pay statements to its interstate drivers on a weekly basis. (Fiedler Decl., ¶ 9.) From that same period of January 22, 2024, to February 18, 2025, Defendant issued approximately 4,727 wage statements to 147 interstate drivers. (Fiedler Decl., ¶ 9.)

DEFENDANT'S NOTICE OF REMOVAL

168855018.1

53.    Plaintiff seeks "to recover the statutory penalty of $50 per employee for the initial pay period in which a violation occurred and $100 per employee for each violation in a subsequent pay period, up to an aggregate penalty of $4,000 per employee, in addition to interest, attorneys' fees, and costs to the extent permitted by law, including under Labor Code section 226(e). Assuming a 100 percent violation rate, and when including a $50 penalty for the alleged initial violation, and $100, for each alleged subsequent violation, the amount in controversy is no less than, **$465,350** [$50 x 147 initial violations] + [$100 x 4,580 subsequent violations]. In the event every Class Member was entitled to the maximum penalty, the amount in controversy would be $588,000 [147 class members x $4,000 maximum penalty]. Accordingly, the overly conservative amount in controversy for Plaintiff's Fifth Cause of Action for wage statement violations is **$465,350.**

### 5.    Sixth Cause of Action: Waiting Time Penalties

54.    Plaintiff's Sixth Cause of Action for Waiting Time Penalties alleges that,

> Because Defendants have not paid all wages and premiums owed to class members to this day, even after they separated from employment, Defendants are also liable for waiting time penalties under Labor Code section 203. (37)

> Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior notice of his or her intention to quit, and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203 and the IWC Wage Orders. (71.)

(Complaint ¶¶ 37, 71.)

55.    This claim is subject to a three-year statute of limitation period. *Pineda v. Bank of America, NA*, 50 Cal. 4th 1389 (2010).

56.    From January 22, 2022, to February 18, 2025, there were approximately 212 terminations of employment among interstate drivers. (Fiedler Decl., ¶ 8.) The average number of hours worked per day is 8.2 hours, and the lowest possible average

DEFENDANT'S NOTICE OF REMOVAL

hourly rate of pay is $29.63. (See supra ¶ 35.) Thus, a reasonable estimate of the amount in controversy for this cause of action is **$1,545,263.76** [$29.63 x 8.2 hours/day x 30 days x 212 terminations].

57.    Even without including all of Plaintiff's claims, a reasonable estimate of the amount in controversy based on the above claims is **$9,941,972.16.** This amount does not factor in alleged unpaid minimum wages, failure to timely pay all wages pursuant to Labor Code section 204, alleged unpaid business expenses, and interest.

### 6.    Attorney's Fees

58.    It is a long-established principle in the Ninth Circuit, and a common practice among federal district courts, to include an estimate of attorneys' fees in determining whether the jurisdictional amount for removal has been met. *See Fritsch v. Swift Transp. Co. of Arizona*, 899 F.3d 785, 794 (9th Cir. 2018) (affirming that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount in controversy requirement is met"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may be included when calculating the amount in controversy); *Goldberg v. CPC International*, 678 F. 2d 1365, 1367 (9th Cir. 1982) ("potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement) (emphasis added); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorney's fees likely to be incurred cannot be estimated at the time of removal"). "[T]he measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (court may apply its "twenty-plus years' experience" to project the likely attorneys' fees to be incurred, even if the specific "attorney's fees cannot be precisely calculated" at the time of

25

168855018.1

removal).

59.    Consideration of attorney's fees is also appropriate in evaluating whether the jurisdictional amount has been met under CAFA. *See, e.g.*, *Rodriguez v. Cleansource, Inc.*, No. 14–CV–0789–L, 2014 WL 3818304, *3-5 (S.D. Cal., Aug. 4, 2014) (denying motion to remand because CAFA jurisdictional amount was met when attorneys' fees in the amount of 25% of the common fund were included in the amount in controversy estimate); *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA."); *Campbell v. Vitran Exp., Inc., 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA).*

60.    Defendant's calculation of attorneys' fees need only be "plausible," and does not require proof by "evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)) ("'[A] defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold,' and *need not contain evidentiary submissions*.") (emphasis added). Plaintiff cannot defeat removal based on the attorneys' fees calculation unless he can show that it is "legally impossible for [him] to recover that much." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010) (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)) ("[O]nce the proponent of federal jurisdiction has explained *plausibly* how the stakes exceed $5 million . . . *then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much*.") (emphases added).

61.    Federal courts have held that, for purposes of removal, it is "plausible" to calculate attorneys' fees as 25% of the total potential damages likely to be recovered. *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also

26

168855018.1

established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Mendoza v. Nat'l Vision, Inc.*, No. 19-CV-01485-SVK, 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) ("The Court agrees that 25% of the aggregate amount in controversy provides a reasonable estimate of the potential attorneys' fees at issue."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *28 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Molnar v. 1-800-Flowers.com, Inc.*, No. 08-CV-0542-CAS-JCx, 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) ("fair estimate of attorneys' fees in this action is 25% of compensatory damages"); *Tompkins v. Basic Research LL*, No. CIV. S08244-LKK-DAD, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) (when calculating attorneys' fees for remand purposes, a reasonable estimate is 25% of the common fund).

62.    As set forth above, the amount placed in controversy by five of Plaintiff's eight causes of action—i.e., those for unpaid regular and overtime wages, uncompensated meal and rest periods, and wage statement and waiting time penalties—already allegedly totals at least $9,842,579.52. Plaintiff also seek attorneys' fees (*see* Complaint, ¶¶ 43, 48, 59, 68, 72, Prayer, ¶ g.). Attorneys' fee awards in California wage and hour class actions can total millions of dollars. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equates to total fees of $1,199,550 in class action involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ("[I]t is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'"

DEFENDANT'S NOTICE OF REMOVAL

(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

63.    Assuming *arguendo* that the amount in controversy as to Plaintiff's claims for attorneys' fees is the ***more conservative 20% benchmark*** of the aggregate alleged amount in controversy for the five causes of action identified above, Plaintiff's recovery of attorney's fees is no less than **$1,988,394.43**. At this more conservative 20% benchmarked estimate, the **total amount in controversy is at least $11,930,366.59**.

64.    Even without including all of Plaintiff's claims and based on the allegations in Plaintiff's Complaint, a reasonable estimate of the amount in controversy based on the above claims is $11,930,366.59. This amount does not factor in any estimated recovery based on Plaintiff's allegations of failure to pay minimum wages, failure to timely pay all wages pursuant to Labor Code section 204, alleged unpaid business expenses, and interest.

65.    Removal of this action is therefore proper as the aggregate value of Plaintiff's class claims for statutory damages, statutory penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5,000,000. *See* 28 U.S.C. § 1332(d)(2).

66.    In light of the above, there is no question that Plaintiff's claims exceed the jurisdictional minimum. Accordingly, the "amount in controversy" requirement under CAFA is satisfied in this case.

## VI.    NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

67.    Following the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal without its accompanying exhibits will be filed with the Clerk of the San Diego County Superior Court in accordance with 28 U.S.C. section 1446(d).

WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of San Diego, to the United States District Court

DEFENDANT'S NOTICE OF REMOVAL

for the Southern District of California.

Dated:    February 27, 2025                    FOX ROTHSCHILD LLP


                                        By: *s/ Jonathan C. Pearce*
                                            Steven W. Moore
                                            Jonathan C. Pearce
                                            *Attorneys for Defendant*
                                            WESTERN DISTRIBUTING
                                            COMPANY, INC.

29

DEFENDANT'S NOTICE OF REMOVAL

168855018.1